UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ALLEN HATFIELD, <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, <br><br> Defendant. | Case No. 14-cv-03262-JCS <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 15, 20 |

## I.      INTRODUCTION

Plaintiff Michael Hatfield challenges the Commissioner of Social Security's denial of his most recent application for disability benefits.  He argues that the Administrative Law Judge ("ALJ") erred in rejecting the treating physician's opinion and in applying res judicata to the period subsequent to the previous denial of disability benefits.  Hatfield filed a Motion for Summary Judgment requesting the Court to reverse the Commissioner's decision and remand for award of benefits.  The Commissioner filed a Cross-Motion for Summary Judgment requesting the Court to affirm the Commissioner's decision.  For the reasons discussed below, Plaintiff's Motion for Summary Judgment is GRANTED, Defendant's Motion for Summary Judgment is DENIED, and the case is REMANDED for award of benefits.[1]

## II.      BACKGROUND

### A.      Procedural Overview

Michael Hatfield is a 43-year old man with a record of physical and mental impairments including degenerative disc disease in his cervical and lumbar spine, joint degeneration, and mental health impairments relating to his mood.  AR at 20.  He first applied for supplemental

---

[1] The parties consented to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

United States District Court
Northern District of California

security income ("SSI") disability benefits in November 2007.  AR at 17.  His first application was denied after an ALJ hearing on the basis that he could perform other jobs available in the economy not including his past relevant work.  AR at 144–45.  In April 2011, Hatfield applied for SSI disability benefits again, alleging changed circumstances since the previous ALJ's decision.  AR at 231.  After an ALJ hearing, Hatfield's application was again denied.  AR at 26.  The second ALJ found that there were no changed circumstances to rebut the presumption of continuing non-disability and thus applied res judicata.  AR at 20–25.  The second ALJ's denial is the subject of Hatfield's appeal.

Hatfield argues that the ALJ improperly applied res judicata in the face of changed circumstances, including new evidence of degeneration in his right knee, new evidence of fibromyalgia, increased severity of degeneration in his left knee, and increased severity in his mental impairments including a diagnosis of bipolar disorder and hallucinations.  Pl.'s Mot. at 4–10.  Hatfield also argues that the ALJ improperly rejected the treating physician's opinion that he could sit, stand, and walk for a total of less than four hours per work day, and given the ALJ's error and the vocational expert's testimony on the lack of such jobs, the case should be remanded for benefits.  Pl.'s Mot. at 3.

**B.    First ALJ's Findings**

The first ALJ held a hearing in October 2009 and found that Hatfield had severe impairments including degenerative disc disease of the cervical and lumbar spine, mild degenerative changes in the left knee, degenerative joint disease of the left shoulder, migraine headaches, Wolff-Parkinson White syndrome, and depression, but ultimately denied Hatfield disability benefits.  AR at 133–145.  The first ALJ concluded that Hatfield's impairments did not meet or equal a listed impairment and that Hatfield could perform and find other work based on the Medical-Vocational Guidelines, a vocational expert's testimony, and Hatfield's residual functional capacity ("RFC") to perform sedentary work with specified limitations.  *Id.*  At the hearing, Hatfield was represented by counsel.  AR at 131.  On February 2010, the first ALJ issued the decision denying disability benefits.  AR at 146.  In March 2011, the Appeals Council denied Hatfield's request for a review of the decision, and the record does not indicate that Hatfield filed

any civil action in response.  AR at 17.

### C.    Second ALJ's Findings

In April 2011, Hatfield filed another application for SSI disability benefits, alleging disability beginning February 11, 2010.  AR at 231.  The application was denied–initially and upon reconsideration.  AR at 17.  In August 2012, the second ALJ held a hearing, during which Hatfield and a vocational expert testified.  AR at 17.  Hatfield was represented by a non-attorney representative.  *Id*.

First, the ALJ found that Hatfield was not engaged in substantial gainful activity.  AR at 20.  Then, the ALJ adopted the previous ALJ's findings with respect to Hatfield's severe impairments, finding a lack of new impairments or increased severity in previously considered impairments.  AR at 20–21.  Given the finding of no new or exacerbated impairments since the previous decision, the ALJ then adopted the previous ALJ's conclusion in the next step–that Hatfield's impairments do not meet or equal a listed impairment.  AR at 21.  With respect to the RFC analysis, the ALJ found no changed circumstances with respect to Hatfield's prior RFC and adopted the previous ALJ's RFC assessment.  AR at 22.  In so doing, the ALJ rejected the treating physician's March 2012 opinion that Hatfield could sit for less than two hours total and could stand or walk for less than two hours total in an eight-hour work day.  AR at 21–24.  Finally, the ALJ adopted the previous ALJ's finding that Hatfield could not perform past relevant work but could perform other available work in the economy, even though the vocational expert at the second hearing found no available jobs given Hatfield's RFC.  AR at 24, 62–63.

### D.    The Record

#### 1.  Dr. Meckler's Opinion

It is undisputed that Dr. Meckler is a treating physician for Hatfield.  *See* Def.'s Mot. at 7–9.  In fact, the record indicates that Dr. Meckler is Hatfield's primary care physician.  AR at 795 ("Advised MA to make appointment for patient with permanent provider, i.e. Dr. Meckler, in 1-2 weeks to discuss pain medications"; October 7, 2011).  In an RFC form completed by Dr. Meckler on March 26, 2012, Dr. Meckler estimated that in an eight-hour work day, Hatfield could sit for a total of less than two hours and could stand or walk for a total of less than two hours.  AR at 749.

United States District Court
Northern District of California

3

1  Dr. Meckler also deemed that Hatfield's impairments would likely cause him to miss three or

2  more days of work per month.  AR at 750.

3  ### 2.  Dr. Meckler's Treatment Notes

4  The record shows that Dr. Meckler began to oversee Hatfield's treatment in September

5  2011.  AR at 793 ("Encounter reviewed and I agree with plan and treatment"; September 9, 2011).

6  On September 9, 2011, Hatfield sought treatment for his pain, where the primary encounter

7  diagnosis was fibromyalgia.  AR at 797.  The record shows that by the time Dr. Meckler filled out

8  Hatfield's RFC assessment, Dr. Meckler had reviewed Hatfield's medical history (*see* AR at 810)

9  and seen Hatfield for office visits on October 19, 2011, November 9, 2011, January 5, 2012,

10  February 2, 2012, and March 26, 2012.  AR at 803–11.  Also included in the record are Dr.

11  Meckler's treatment notes from April 26, 2012.  AR at 801–02.  Dr. Meckler's treatment notes

12  from these visits consistently identify back pain, joint pain, muscle pain, malaise, and mental

13  health symptoms:  November 9, 2011 (positive for neck pain, back pain, neurological weakness,

14  malaise, fatigue, nervous, anxious, and needs medication for fibromyalgia); January 5, 2012

15  (shoulder pain persists, positive for neck pain, myalgias, back pain, joint pain, malaise, fatigue,

16  "tired appearing"; analgesic effectiveness was adequate, where treatment was improving daily

17  function; prescribed medication for bipolar, migraines, and degenerative disc disease); January 20,

18  2012 (prescribed medication for muscle spasms); February 2, 2012 (positive for back pain, joint

19  pain, malaise, and fatigue); March 26, 2012 (positive for neck pain, malaise, and fatigue;

20  prescribed medication for bipolar disorder; "unable to work" due to back pain, fatigue, and mental

21  health problems); April 26, 2012 (primary encounter diagnosis was back pain, "more back pain

22  than before," "constant bilateral arm pain, N/T, weakness and is having difficulty holding

23  objects," increased lower back pain, using a cane more regularly, exhibited decreased range of

24  motion and tenderness in cervical and lumbar back, positive for neck pain, joint pain, myalgias,

25  dizziness, malaise, fatigue, nervous, and anxious; prescribed medication for pain and bipolar

26  disorder).  AR at 801–11.

27  ### 3.  Hatfield's Diagnoses

28  In addition, Dr. Meckler attached to his RFC assessment (a) a list of diagnoses under

United States District Court
Northern District of California

4

"Patient Active Problem List" as of October 2011; (b) several MRI and x-ray results from May 2010 and earlier; and (c) treatment notes from a doctor at the same medical center who conducted Hatfield's initial evaluations in July 2011 and October 2011.  AR at 999–1032.  The list of diagnoses includes degenerated disc disease of the cervical and lumbar spine, enthesopathy of knee and shoulder, Wolff-Parkinson-White syndrome, dysthymic disorder, fibromyalgia, bipolar disorder, and peripheral neuropathy.  AR at 1007–08.

### 4.  Hatfield's MRIs and X-Rays

The MRI and x-ray results include MRIs of the left and right knees from May 2010 and earlier MRIs and x-rays of the spine, shoulder, and left knee.  AR at 1020–32.  Specifically, the left knee MRI in May 2010 revealed a partial tear of the ACL with subchondral cyst formation and full-thickness chondromalacia in the patella, whereas the left knee MRI in April 2007 revealed no meniscal tear and only intermediate grade chondromalacia in the patella.  AR at 1020, 1032.  The right knee MRI in May 2010 depicted a large subchondral cyst formation with a 1.5 cm osteochondral defect in the medial femoral condyle with underlying complete loss of cartilage, full-thickness chondromalacia in the patella, subchondral 1 cm cyst formation in the lateral tibial plateau, and a loose body in the posterior joint compartment–potentially causing "instability of the knee."  AR at 1023.  The record indicates no previous MRI of the right knee.  AR at 133–146; 1020–32.

### 5.  Other Treatment Notes Cited by Dr. Meckler

Finally, the treatment notes from the initial evaluations in July 2011 and October 2011 indicate "back pain" as the reason for visit, a pain score of 5 (worst) on the Wong Baker Pain Scale, and that "the only areas that seem to be pain-free, or seldom affected by pain, are the anterior chest/torso, groin [and] anterior thighs."  AR at 1007–08.  During the examination, Hatfield's gait was "antalgic bilaterally."  AR at 1012.  His symptoms were "remarkable for bilateral knee tenderness [and] crepitance."  AR at 1011.  In addition, Hatfield displayed 28 of 36 fibromyalgic symptoms–including 11 out of 18 tender points, fatigue, and aggravation with activity and cold or wet weather–and was prescribed medication for fibromyalgia.  AR at 1009, 1011–12.  The notes indicate that Hatfield's pain severity is "activity dependent" and that walking

1 | more than 30 feet, standing more than five minutes, and sitting more than ten minutes are among

2 | activities that worsen Hatfield's pain.  AR at 1009, 1013.

3 | **III.    LEGAL STANDARD**

4 | This Court has authority to review the Commissioner's denial of benefits.  42 U.S.C. §

5 | 405(g).  This Court will only disturb the denial of benefits if the decision "contains legal error or is

6 | not supported by substantial evidence"; otherwise, the Court must affirm the decision.  *Orn v.*

7 | *Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "more than a mere scintilla but

8 | not necessarily a preponderance"–it is "reasonable evidence that a reasonable mind might accept

9 | as adequate to support the conclusion."  *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003).

10 | The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and

11 | conflicting clinical evidence, stating her interpretation thereof, and making findings.  *Magallanes*,

12 | 881 F. 2d 747, 751 (9th Cir. 1989).  Under this standard, the ALJ's findings are upheld if

13 | "supported by inferences reasonably drawn from the record."  *See Batson v. Comm'r of Soc. Sec.*

14 | *Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).   Where the record supports more than one rational

15 | interpretation, the Court must defer to the ALJ's decision.  *Magallanes*, 881 F. 2d at 750.

16 | **IV.    ANALYSIS**

17 | **A.    Standard for Rejecting Dr. Meckler's Opinion**

18 | To reject a treating physician's uncontroverted opinion, an ALJ must provide "clear and

19 | convincing reasons" supported by substantial evidence in the record.  *Bayliss v. Barnhart*, 427

20 | F.3d 1211, 1216 (9th Cir. 2005).  Even if the treating doctor's opinion is contradicted by another

21 | doctor, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence

22 | in order to reject the treating physician's opinion.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

23 | 1995).

24 | Here, the ALJ rejected Dr. Meckler's opinion that Hatfield could only sit, stand, and walk

25 | for a total of less than four hours per work day and that Hatfield was likely to miss at least three

26 | days of work per month.  AR at 23.  Instead, the ALJ adopted the previous ALJ's RFC assessment

27 | that Hatfield could perform sedentary work (which requires sitting and occasional standing and

28 | walking for a total of eight hours a day for five days a week, or the equivalent), provided that

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1  Hatfield has a moderate concentration deficit, cannot reach over the shoulders, and needs a sit-

2  stand option.  AR at 21–22.  The previous ALJ's RFC assessment relied in part on an RFC form

3  completed by an examining physician in December 2009, which stated that Hatfield could sit for

4  seven hours in an eight-hour work day and could stand and walk one hour each in an eight-hour

5  work day.  AR at 141.  The evaluation was based on a single examination of Hatfield and MRIs of

6  Hatfield's spine from July 2009 and Hatfield's left knee from 2002, among other records.  AR at

7  820.  Because Dr. Meckler evaluated Hatfield more than two years later based on more recent

8  clinical and laboratory findings and the ALJ did not point to any conflicting opinions in rejecting

9  Dr. Meckler's opinion, Dr. Meckler's opinion is uncontroverted for the purposes of this review.

10  *See Jacks v. Barnhart*, No. C 03-0674 SI, 2004 WL 2200944, at *8 (N.D. Cal. Sept. 15, 2004)

11  (treating physician's opinion from October 2001 was considered uncontroverted in the record

12  where the only source of conflicting evidence was based on records from 2000).

13  **B.  ALJ's Reasons for Rejecting Dr. Meckler's Opinion**

14  In reviewing the ALJ's rejection of Dr. Meckler's opinion, the Court is constrained to

15  review the reasons provided by the ALJ and may not affirm the ALJ on a ground upon which she

16  did not rely.  *See Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

17  Here, the ALJ determined that Dr. Meckler's opinion was entitled to only partial weight

18  because it was "not well-supported by Dr. Meckler's treatment notes."  AR at 23.  First, the ALJ

19  noted that Dr. Meckler "has seen the claimant on only three occasions, for treatment of fatigue,

20  sexual dysfunction, and shoulder pain," during which he "administered testosterone injections and

21  prescribed pain medications."  AR at 23.  Second, the ALJ pointed out that "in January 2012, Dr.

22  Meckler noted that the claimant's current treatment was improving his daily functioning, and in

23  February 2012, he noted normal psychiatric findings and no complaints of pain."  AR at 23.  The

24  ALJ provided no other justification for discounting Dr. Meckler's opinions.

25  Even though the ALJ did not explicitly say that she rejected Dr. Meckler's opinion

26  regarding Hatfield's limited ability to sit and stand, her decision not to incorporate the limitation

27  into her RFC finding amounts to a rejection of the opinion.  *See Magallanes*, 881 F. 2d at 755.

28  Thus, the ALJ must justify her discrediting of Dr. Meckler's opinion with clear and convincing

1    reasons supported by substantial evidence in the record.  *See Lester*, 81 F.3d at 830.

2        **C.    The ALJ Erred in Rejecting Dr. Meckler's Opinion**

3        When a treating physician's opinion is "well-supported by medically acceptable clinical

4    and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in

5    [the] case record," the opinion is entitled to controlling weight.  *Ghanim v. Colvin*, 763 F.3d 1154,

6    1160 (9th Cir. 2014).  If the treating physician's opinion is not entitled to controlling weight, the

7    ALJ must then decide what weight to give the opinion by considering factors such as the length,

8    nature, and extent of the treatment relationship.  *Orn*, 495 F.3d at 632.  A physician's limited

9    patient contact is not by itself a proper basis to reject the physician's opinion.  *See Benton v.*

10   *Barnhart*, 331 F.3d 1030, 1035–36 (9th Cir. 2003); *Dervin v. Astrue*, 407 F. App'x 154, 157 (9th

11   Cir. 2010) (ALJ erred in rejecting a physician's opinion on the basis that the physician had seen

12   the claimant only twice).

13       In addition, an ALJ may reject a treating physician's opinion on the basis that the opinion

14   is contradicted by the physician's own treatment notes, but identifying a few reports of

15   improvement without further explanation or reference to other treatment records is not substantial

16   evidence of a contradiction.  *See Garrison*, 759 F.3d at 1014 (ALJ erred when she "manufactured

17   a conflict by identifying two or three reports of improvement in Garrison's mental health and

18   asserting, without reference to any other treatment records or any other explanation, that

19   Anderson's considered conclusions about Garrison's overall prognosis merited little weight");

20   *Ghanim*, 763 F.3d at 1161; *Lester*, 81 F.3d at 833.

21       First, with respect to the extent of Dr. Meckler's involvement in Hatfield's treatment, the

22   ALJ's characterization was based on an inaccurate and incomplete reading of the record–it left out

23   appointments and skipped over notes.  In the year leading up to the ALJ hearing in August 2012,

24   Dr. Meckler was more involved in Hatfield's treatment than any other physician in the record.  As

25   Hatfield's primary care physician beginning September 2011, Dr. Meckler did not merely treat

26   Hatfield for "fatigue, sexual dysfunction, and shoulder pain."  AR at 23.  The record shows that

27   Dr. Meckler also treated Hatfield for back pain, neck pain, bipolar disorder, fibromyalgia, muscle

28   spasms, esophageal reflux, and migraines.  AR at 803–11.  Dr. Meckler did not merely

United States District Court
Northern District of California

8

United States District Court
Northern District of California

"administer testosterone injections and prescribe pain medications." AR at 23. He prescribed not just medication for Hatfield's back and joint pain but also for Hatfield's bipolar disorder, migraines, esophageal reflux, fibromyalgia, and muscle spasms, and ordered an MRI of the lumbar spine in response to Hatfield's exacerbating symptoms for lower back pain. AR at 803–11. The assertion that "Dr. Meckler has seen the claimant on only three occasions" misstates the record. AR at 23. Dr. Meckler began to oversee Hatfield's treatment in September 2011. AR at 793. Between October 2011 and March 2012, when Dr. Meckler completed his RFC assessment, Dr. Meckler saw Hatfield about once a month for a total of five office visits. At the time of the ALJ hearing, Dr. Meckler had seen Hatfield at least six times. AR at 803–11. The record is also clear that in forming his RFC assessment, Dr. Meckler relied not only on his own clinical experiences with Hatfield, but also on Hatfield's medical history, MRIs and x-rays, and the treatment notes of other clinicians at the medical center. AR at 793, 1001. Thus, the ALJ's concern about Dr. Meckler's lack of basis to make an informed assessment is not supported by the record.

But even if Dr. Meckler had seen Hatfield "on only three occasions, for treatment of fatigue, sexual dysfunction, and shoulder pain," and merely "administered testosterone injections and prescribed pain medications," a physician's limited treatment relationship with a patient is not by itself a proper basis to reject the physician's opinion. *See Orn*, 495 F.3d at 632 (in the event that substantial evidence in the record contradicts the treating physician's opinion such that the treating physician is no longer entitled to controlling weight, the ALJ is instructed to consider factors such as the length and extent of the treatment relationship); *Benton*, 331 F.3d at 1035–36 (where doctor who oversaw claimant's care only saw claimant on one occasion, ALJ could not reject the doctor's opinion in favor of a non-examining doctor without any additional specific, legitimate reason based on substantial evidence); *Dervin v. Astrue*, 407 F. App'x at 157 (where physician who was part of a medical group saw claimant only twice, the ALJ erred in rejecting the physician's opinion on the basis that he saw the claimant only twice). In this case, unless Dr. Meckler's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with other substantial evidence in [the] case record" such that it is no longer entitled to controlling weight, the nature and extent of the treatment

9

United States District Court
Northern District of California

relationship cannot be by itself a basis for rejecting Dr. Meckler's opinion.  *See Orn*, 495 F.3d at 632.

Here, although the ALJ claimed that Dr. Meckler's opinion was not well-supported by his treatment notes, the ALJ failed to state any reason, supported by substantial evidence in the record, that explains how the treatment notes contradict or fail to support the opinion.  *See Garrison*, 759 F.3d 995, 1012–13 (9th Cir. 2014) ("an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion"); *Sprague v. Bowen*, 812 F.2d 1226, 1230–31 (9th Cir. 1987) ("We fail to see the significance of the purported inconsistencies, and mere reference to them does not satisfy the requirement…that the ALJ set forth 'specific, legitimate reasons'").  The only reference that the ALJ made to an inconsistency between the treatment notes and the opinion was noting a few reports of improvement.  AR at 23 ("In January 2012, Dec. Meckler noted that the claimant's current treatment was improving his daily functioning, and in February 2012 he noted normal psychiatric findings and no complaints of pain").

First, the ALJ misread one of treatment notes that she pointed out.  The treatment note from February 2012 does not indicate a lack of pain, but rather positive symptoms for back pain and joint pain as well as positive symptoms for malaise and fatigue.  AR at 804.  With respect to the alleged "normal psychiatric findings," the identical note appears under the psychiatric section of Hatfield's Physical Exam in every one of Dr. Meckler's progress notes–even those where Dr. Meckler prescribed medication for bipolar disorder and found that Hatfield was anxious and nervous.  *See*, e.g., AR at 804 ("He has normal mood and affect.  His behavior is normal. Judgment and thought content normal").  Thus, in the context of the treatment notes as a whole, it is not reasonable to interpret these notes as a reflection of Hatfield's lack of mental health needs. *See Jacks*, 2004 WL 2200944, at *3 ("If Dr. Talcott indicated a finding of no pain on his examination report, but then immediately ordered an x-ray due to pain, this suggests that a typographical or transcription error may have been made on the examination report, since there would be no apparent reason to order an x-ray for an otherwise unremarkable physical exam").

United States District Court
Northern District of California

1    Furthermore, this is a case where the treatment record is plagued with symptoms of

2    physical pain–back pain, joint pain, muscle pain–as well as malaise and mental health needs.  Dr.

3    Meckler's treatment notes consistently reflect positive symptoms for back pain, joint pain,

4    malaise, fibromyalgia and muscle spasms, and the need for bipolar medication, fibromyalgia

5    medication, and pain treatment.  AR at 803–11.  In particular, Dr. Meckler's notes reveal that a

6    month after his RFC assessment, Hatfield's pain intensified.  AR at 801 (more back pain than

7    before, increased lower back pain and weakness in the bilateral lower extremities, using a cane

8    more regularly now, constant bilateral arm pain, having difficulty holding objects).  Thus, against

9    the backdrop of this treatment record, the two instances identified by the ALJ do not amount to

10   substantial evidence that Dr. Meckler's treatment notes contradict or fail to support his opinion,

11   especially where the ALJ merely points them out and provides no further explanation.  *See*

12   *Garrison*, 759 F.3d at 1014; *Ghanim*, 763 F.3d at 1161 (physician's opinion that claimant was

13   unlikely to be able to work was not contradicted by notes reflecting some bouts of improved mood

14   and energy amid otherwise consistently severe symptoms, and thus ALJ erred in rejecting

15   physician's opinion on that basis); *Lester*, 81 F.3d at 833 ("Occasional symptom-free periods–and

16   even the sporadic ability to work–are not inconsistent with disability," finding that a period of

17   positive response to treatment is not inconsistent with disability, especially where later notes

18   indicated difficulty walking and need for stronger treatment).

19   Unlike in *Bayliss* and *Rollins*, two cases that the Commissioner cites to, Dr. Meckler's

20   opinion was not contradicted by his own treatment notes.  In *Bayliss*, the ALJ rejected the treating

21   physician's assessment that Bayliss could stand or walk for only fifteen minutes at a time, but the

22   physician's clinical notes, taken on the same day, "contradict[ed]" the assessment.  *Bayliss*, 427

23   F.3d at 1216 (affirming ALJ's rejection of treating physician).  In *Rollins*, the doctor deemed that

24   Rollins was disabled, but on the same day, the doctor noted that Rollins had improved since the

25   previous examination, and the findings at that previous examination indicated that Rollins was not

26   disabled.  *Rollins*, 261 F.3d at 856 (affirming ALJ's rejection of treating physician).  Here, the fact

27   that Hatfield's treatment was "improving daily function" in January 2012 does not contradict Dr.

28   Meckler's opinion regarding Hatfield's limited ability to sit, stand, and walk:  Hatfield can

1    improve in daily functioning and still not be able to sit, stand, and walk for four hours per day,

2    especially given that on the same visit, he was prescribed hydrocodone-acetaminophen to be taken

3    every four to six hours for his intervertebral disc protrusion.  AR at 807.

4         Given that none of the ALJ's reasons for rejecting Dr. Meckler's opinion was supported by

5    substantial evidence in the record, ALJ erred in rejecting Dr. Meckler's opinion.

6         **D.    Remedy for Improper Rejection of Dr. Meckler's Opinion**

7         The appropriate remedy for the improper rejection of Dr. Meckler's opinion is to credit the

8    opinion as true and remand for award of benefits.  *See Ha Ngoc Nguyen v. Colvin*, No. C-12-

9    01158 JCS, 2013 WL 4505253, at *16 (N.D. Cal. Aug. 13, 2013) (crediting doctor's opinion as

10   true and remanding for award of benefits where the ALJ improperly rejected the doctor's opinion

11   that claimant could not stand or walk for more than four hours in a work day and a vocational

12   expert testified that a person with claimant's limitations who also could not stand or walk for more

13   than four hours per work day could not perform any job); *Jacks*, 2004 WL 2200944, at *9

14   (crediting physician's opinion as true and remanding for payment of benefits where the ALJ

15   improperly rejected the physician's opinion that claimant could stand, walk, and sit for less than

16   four hours a day total).

17        Here, finding that there was no "changed circumstances" with regard to the claimant's

18   residual functional capacity, the ALJ adopted the previous ALJ's RFC assessment.  AR at 22; *see*

19   *Lester,* 81 F.3d at 827–28 (an ALJ may apply res judicata to a period subsequent to a prior

20   determination only if there are no "changed circumstances," such as an increase in the severity of

21   the claimant's impairments or a new impairment not considered in the previous application).  But

22   the finding of no changed circumstances was premised on an error–discrediting Dr. Meckler's

23   opinion.  Had the ALJ credited Dr. Meckler's opinion that Hatfield could only sit, stand, and walk

24   for a total of less than four hours in a work day, there would have been changed circumstances in

25   Hatfield's RFC because with the capacity to sit, stand, and walk a total of less than four hours in a

26   work day, Hatfield would not be able to perform sedentary work.  AR at 141 (previous ALJ found

27   that Hatfield could perform "sedentary work," relying in part on an examining physician's RFC

28   form indicating that Hatfield could sit for a total of seven hours in a perk day and could stand and

United States District Court
Northern District of California

12

United States District Court
Northern District of California

walk one hour each in a work day); *Jacks*, 2004 WL 2200944, at *8 (under SSR 96–8p, sedentary work requires the ability to sit and occasionally stand and walk for a total of eight hours a day for five days a week, or the equivalent).  Had the ALJ credited Dr. Meckler's opinion, Hatfield would not have had the RFC to perform any work and would thus be disabled under 20 C.F.R. § 404.1520(a)(4)(v):  Dr. Meckler's opinion describes an individual who can work less than four hours total in an eight-hour work day, and the vocational expert testified that there would be no work available even for an individual who would only be off task 20 percent of the time in an eight-hour work day.  AR at 63 (vocational expert's testimony that even being "off task 20 percent of the time" is "too much time off from the work environment, that could not be performed"); *Jacks*, 2004 WL 2200944, at *8; *see also Cash v. Astrue*, No. EDCV 09-1150 CW, 2010 WL 2888973, at *5 (C.D. Cal. July 20, 2010) (a claimant who is likely to miss three or more days of work per month is unable to work and therefore disabled, even absent specific vocational expert testimony).

Given that the ALJ failed to provide legally sufficient reasons for rejecting Dr. Meckler's opinion, that the record has been fully developed such that administrative proceedings would serve no useful purpose, that the ALJ would be required to find Hatfield disabled upon crediting Dr. Meckler's opinion as true, and that the record discloses no reason to seriously doubt that Hatfield is disabled, it is appropriate to remand for award of benefits.  *See Garrison*, 759 F.3d at 1020. Unlike in *Treichler*, where the record contained "significant factual conflicts" and "ambiguities," here there is no need to further develop the record, and the Court's review of the record reveals no significant factual conflicts or ambiguities.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) (district court did not abuse its discretion in remanding for further proceedings).  Unlike *Burrell*, where the record created "serious doubt" regarding whether the claimant was in fact disabled, the Court's review of this record reveals no reasons to seriously doubt that Hatfield is disabled.  *See Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (remanding for further proceedings after finding that the ALJ erred in finding claimant's statements not credible and rejecting treating physician's opinion).  The Commissioner also fails to point to any specific evidence in the record that casts serious doubt onto Hatfield's disability

United States District Court
Northern District of California

claim.  *See* Def.'s Mot. at 10; *Garrison*, 759 F.3d at 1022 (noting that the Commissioner did not point to anything in the record that cast serious doubt onto claimant's disability claim).  Accordingly, the Court credits Dr. Meckler's opinion as true and remands the case for award of benefits.

### E.    Remaining Arguments

It is not necessary to address Hatfield's remaining arguments about the various changed circumstances that the ALJ failed to take into account.  Dr. Meckler's opinion, credited as true, is by itself sufficient evidence of changed circumstances warranting remand for award of benefits.  The Court notes, however, that the ALJ's decision contains no indication that she saw or took into account the new evidence of degeneration in Hatfield's right knee or the evidence of increased degeneration in Hatfield's left knee.  *See* AR at 22 (ALJ finding "no evidence that the claimant obtained an MRI as requested [by Dr. Henderson in April 2010] to evaluate allegedly worsening knee pain); AR at 1020–24, 1032 (MRIs of (1) right and left knees, May 2010; and (2) left knee, April 2007).  The ALJ found that the various diagnoses of bipolar since the previous ALJ's decision did not establish changed circumstances given that the previous ALJ considered similar symptoms.  AR at 20.  However, the ALJ did not discuss the new evidence of hallucinations (AR at 527, 574) or new evidence of treatment for Hatfield's bipolar diagnosis (AR 803–11).  Finally, the ALJ discounted the new evidence of fibromyalgia, determining that it only appeared in Hatfield's July 2011 and October 2011 treatment notes and that Hatfield's "defensive" and "childlike" toleration to the exam rendered the clinical findings of fibromyalgia invalid.  AR at 21.  However, the ALJ did not seem to see the subsequent treatment notes in the record (incidentally Dr. Meckler's) showing that Hatfield continued to experience symptoms of fibromyalgia and even required medication for it.  AR at 801, 805, 807, 810.  Furthermore, the ALJ's conclusion that Hatfield's defensive or childlike toleration of an exam undermined the clinical findings of his fibromyalgia finds no support in the record.

## V.    CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment is GRANTED and Defendant's Motion for Summary Judgment is DENIED.  The Court REVERSES the

Commissioner's decision and REMANDS the case for award of benefits.  The clerk is instructed to enter judgment in favor of Plaintiff Michael Hatfield.

**IT IS SO ORDERED.**

Dated:  July 6, 2015

_____

JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California

15